# CHARLESTON

RILEY *et al.* v. PATTERSON *et als.*

Submitted January 27, 1914.   Decided April 21, 1914.

TRIAL—*Directing Verdict.*

> Where on the trial of a suit in ejectment the evidence of plaintiff is not, on motion of defendant to strike it out, such that a verdict in his favor would be allowed to stand, the trial court may properly sustain such motion and direct a verdict for defendant.

Error to Circuit Court, Mingo County.

Action by John W. Riley and others against S. W. Patterson and others. Judgment for defendants, and plaintiffs bring error.

*Affirmed.*

*G. R. C. Wiles,* for plaintiffs in error.

*Stokes & Bronson* and *Sheppard, Goodykoontz & Scherr,* for defendants in error.

MILLER, PRESIDENT:

In ejectment, after plaintiffs had concluded their evi-

dence, the court on defendants' motion excluded the same, and directed a verdict for defendants, which being returned, the court thereon pronounced the judgment of nil capiat complained of.

Several questions are presented and argued; but as we view the case most of them are immaterial and uncontrolling, and though duly considered, will not be further noticed in this opinion.

The land sued for is described in the declaration by metes and bounds, and proven to contain twenty-nine acres and a fraction. Plaintiffs undertook to show a common source of title. Counsel for defendants conceded that they did so; but it is insisted that afterwards they introduced prior deeds, showing defects, one of which on objection was rejected, breaking their chain back to the commonwealth, and that the prima facie case made by the subsequent deeds was thereby overcome. But we need not go into these questions.

One of the deeds relied on as source of title was from Benjamin Williamson, Jr., and wife, to Lucinda Riley, wife of plaintiff Riley, dated July 30, 1878, calling for 800 acres, by substantially the same description as prior deeds under which the plaintiffs claimed title thereto. After the death of Lucinda Riley, plaintiffs, having acquired title to this land by deeds describing the land in the same way, by their joint deed, also introduced in evidence, dated December 6, 1909, as defendants contend, conveyed the same to defendant Patterson, but plaintiffs contend that their deed to Patterson conveyed only a part of the land, and that it did not cover the land sued for.

The controversy arises out of a portion of the description in the immediate deed to Lucinda Riley, substantially the same as in prior deeds in her chain of title, as follows: "thence with the dividing ridge between lick and spruce creeks and Daniel McCoy's branch, and said lick creek to a knob at the head of the old field branch, thence around said ridge so as to include all the Bear Wallow branch, thence from the top astrate line to the beginning, containing eight hundred acres, more or less." It is insisted by plaintiffs that this description conveys the land in controversy, and which was not conveyed by them to Patterson. The description in

the latter deed was taken immediately from a survey made by Mitchell, surveyor, just before plaintiffs made their deed to Patterson, but made according to their title papers. Mitchell, as a witness for plaintiffs, on cross-examination, gives as his reason for not including the land sued for, that he did not think Riley owned it; that Riley had not furnished him any deeds covering the land in dispute. And he swears he ran out the land by the original deed from Richard Maynard to William H. Maynard, one of the deeds introduced by plaintiffs and relied on as source of title.

The present controversy centers around the true location of the Knob called for in that part of the description quoted. In the deed from plaintiffs to Patterson the description covering this point and supposed by the surveyor making it to be coincident with the description in the prior deeds, and to include all the land called for therein, is as follows: "thence S 79 35' W for 268.6 feet to a chestnut oak on top of *the Bearwallow knob*; thence leaving the ridge and down the spur on the lower side of Bearwallow Br. N 4 49' W for 41.8 feet to a stake; thence N 7 56' W for 126.3 feet to a stake; thence N 6 13' E for 54.2 feet to a stake; thence N 12 15' W for 202.2 feet to a stake; thence N 1 31' E for 112.0 feet to a stake; thence N 25 37' E for 96.4 feet to a stake; thence N 40 51' E for 181.2 feet to a large sugar on bench of spur; thence N 24 35' EE for 211.4 to a hickory and hornbeam; thence N 63 57' E for 346.6 feet to a chestnut oak near a large flat rock; thence N 52 26' E for 766.5 feet to a small black gum on bench of Winifrede coal seam; thence N 51 38' E 1608.8 feet to the beginning. Containing in all 643.1 acres." But the deed does not stop with this description, it continues: "It being the same real estate conveyed unto Lucinda Riley by Benjamin Williamson, Jr., and Parlie Williamson, his wife, by deed dated the 30th day of July, 1878", referring also to the deed book and page where recorded. Also "the same real estate of which the said Lucinda Riley died seized and possessed, and conveyed by" her "children and heirs at law    *    *    *    to the said John W. Riley, and unto the said Alexander Bishop as follows", referring also to the several prior deeds and conveyances under which plaintiffs claim. This deed contains reservations of timber and so forth, but no other reservations.

It also contains a covenant for the execution of "such further assurances of said property as may be requisite."

Plaintiffs' contention is that the "knob" "at the head of the old field branch", called for in the deed to Lucinda Riley, is not "the Bearwallow knob" called for in their deed to Patterson, but another knob farther out the ridge and some eleven hundred feet beyond that point, called "Old Field Knob". The latter knob, from the evidence, seems to be a well known point, and is a point called for by that name in several deeds executed to other sons by Richard Maynard, for land lying near by or adjoining the land conveyed to defendants, a few months after he made his deed to his son William H. Maynard, of January 26, 1869, the deed under which plaintiffs claim, and which is the first deed which describes the 800 acres by the description given in Mrs. Riley's deed. It will be observed that the knob called for in this and other deeds following it is not "Old Field Knob" but "a knob at the head of the old field branch". That Richard Maynard in his deed to his son William H. Maynard did not, as in the three deeds to his other sons, call for "Old Field Knob" in specific terms, is a pertinent fact, going to justify the judgment below; for if the interpretation put by plaintiffs upon their deeds be the correct one, their line would have to be carried beyond Bear Wallow Knob and to a point on the ridge beyond "Old Field Knob" quite a distance so that a straight line therefrom to the beginning corner of the 800 acre tract would "include all the Bear Wallow branch" called for in her deed. But such a line would also include a large portion of the lands conveyed by Richard Maynard to other sons at the head of Lick Fork and Money Branch of Lick Creek, and under whom the defendants, the United Thacker Coal Company claim title. That it was not the intention of Richard Maynard, the common grantor, in his deed to his son William H. Maynard, of January 26, 1869, to convey the land in controversy, is most patent from the record, else he would not so soon afterwards, in apportioning and conveying lands to his other sons, have included it in his deeds to them. From these later deeds we know he was well acquainted with Old Field Knob, but as we have shown he did not call for that knob in his deed to his son William H. Maynard. True he called for a knob at the

74 W. Va.

head of Old Field Branch, but the knob recently designated as Bear Wallow Knob, which some of the plaintiffs' witnesses say was not known by that name, or any name until recently, will answer the description at the head of Old Field Branch substantially as well as Old Field Knob. Besides leaving Old Field Knob and following around the ridge so as to "include all Bear Wallow branch" will better answer the requirements of the deed to Lucinda Riley and the prior deeds in her chain than to attempt to run out the land called for by the lines extended beyond that point, and gives to the claimants under the William H. Maynard deed all the land which the common grantor, Richard Maynard, plainly intended to convey.

Of course we are not unmindful of the rule that specific descriptions will not generally be controlled by general descriptions in a deed; nor are we unmindful of the rule that a grantor is not necessarily estopped in such cases of specific and general descriptions in a deed, when it is manifest that he intended to limit his grant by the specific description, and if there was any doubt presented by the evidence, as to whether or not the land in controversy was covered or intended to be covered by the deed to Lucinda Riley and those under whom she claims, and not conveyed or intended to be conveyed in the deed of plaintiffs to Patterson, the case should have gone to the jury on these questions of fact, and the judgment below would be erroneous. But we think there is little, if any, doubt as to what land the deeds cover. The evidence is practically all documentary, and the facts are not controverted. The feeble attempt of the plaintiffs to make out a case of adversary possession wholly failed. The rule applicable to the case presented, we think, is that where the evidence of plaintiff is such that a verdict in his favor would not be allowed to stand, it is not only the right but the duty of the court to direct a verdict, as was done in this case. This proposition has been so many times affirmed by decisions of this and other courts with which counsel are familiar that it becomes unnecessary to cite them. The judgment below is therefore affirmed.

*Affirmed.*